IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

QUADIRI AYODELE,

      Plaintiff,

v.                                                                 Civil Action No. 1:19cv183
                                                                 (Judge Kleeh)

WARDEN HUDGINS; AUSA FLOWERS;
A.W. MESSER; SIS VANDEVENDER; and
SIS ALDRIDGE,

      Defendants.

**REPORT AND RECOMMENDATION ON MOTION FOR**
**PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

### I. Background

The *pro se* Plaintiff, a federal inmate, initiated this Bivens civil rights action on September 18, 2019, challenging the Bureau of Prisons' ("BOP") decision to remove him from general population at FCI Gilmer and house him in the Special Housing Unit ("SHU") during the pendency of a criminal investigation to determine if he was involved in a drug smuggling scheme within the prison.

On January 10, 2020, the Plaintiff filed a Motion for a Preliminary Injunction and Temporary Restraining Order, which is before the undersigned for a Report and Recommendation.

### II. Analysis

A preliminary injunction is "an extraordinary remedy that only may be awarded upon a clear showing that the plaintiff is entitled to such relief." Dewhurst v. Century Aluminum Co., 649 F.2d 287, 290 (4th Cir. 2011)(quoting Winter v. Natural Res. Def. Counsel, Inc., 55 U.S. 7 (2008)); see Peterson v. National Telecommunications & Information Admin., 505 F. Supp.2d 313, 317 (E.D. Va. 2006)(quoting Direx Israel Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th

Cir. 1992))(recognizing that "[a] preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it").

In order to obtain the extraordinary remedy of a preliminary injunction, the burden is on the moving party to demonstrate: (1) "that he is likely to succeed on the merits;" (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in his favor;" and (4) "that an injunction is in the public interest." Dewhurst, 649 F.3d at 290 (internal quotation marks and citations omitted); See Direx v. Israel, 952 F.2d at 812) (indicating that the moving party bears the burden of demonstrating the propriety of a preliminary injunction). In Dewhurst, after setting forth the above four-part test, the United States Court of Appeals for the Fourth Circuit separately highlighted the fact that controlling precedent from the Supreme Court of the United States requires that a plaintiff "**clearly show**" that he is likely to succeed on the merits. Id. Winter, 555 U.S. at 22. (emphasis added.).

The demanding standard outlined above becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo pending trial. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that 'mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief'). As explained by the Fourth Circuit:

> Ordinarily, preliminary injunctions are issued to "protect the status quo and to prevent irreparable harm during the pendency of the lawsuit or alternately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litg., 333 F.3d 517, 525 (4th Cir. 2003). Movant, however, seeks to alter the status quo by having a federal court order the Board to include his name on a primary election ballot. But such "[m]andatory preliminary

2

injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Id. (citation omitted). Consequently, our "application of th[e] exacting standard of review [for preliminary injunctions] is even more searching when the relief requested "is mandatory rather than prohibitory in nature." Id.

Here, the Plaintiff requests that this Court issue a preliminary injunction and temporary restraining order directing the Defendants to "release[e] Plaintiff . . . back to general population, and out of the Special Housing Unit." ECF No. 24 at 1. Without this relief, the Plaintiff maintains that he will suffer irreparable harm, given that his "mental and physical health will continue to deteriorate at a rapid pace, especially his eyesight[,] which has slowly been degenerating due to lack of long distance use." ECF No. 24-1 at 1.

The pertinent statutes relevant to Plaintiff's request for an order regarding his removal from the SHU and placement back into the general population are found at 18 U.S.C. §§ 3621(b) and 4081. Section 3621(b) states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate.

Section 4081 states:

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners, according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

These statutes provide the BOP with wide discretion to determine where to house a prisoner, and also to prevent prisoners from challenging their geographic designation within the BOP system. Moody v. Daggert, 429 U.S. 78, 87 n. 9 (1976) (stating that § 4081 provides the BOP

with wide discretion and provides "no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Trowell v. Bealer, 135 Fed. App'x 590, 595 (4th Cir. 2005). It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 40 (2002) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gatson v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The Code of Federal Regulations provides several instances, including holdover status, transfer, and post-disciplinary detention, when a prisoner may be placed in administrative detention status. 28 C.F.R. § 541.23. The reason for such discretion is to provide for "the security and orderly running of the institution." Id.

      The Plaintiff's Amended Complaint alleges that on April 6, 2019, he was taken to the SHU and informed that he was awaiting prosecution from the Assistant United States Attorney ("AUSA"), and that ever since then, has "languished" there, denied access to visitors, phone calls, email, educational material, legal aid, hygiene and/or medical supplies, and medical or even psychiatric treatment. ECF No. 25 at 7 – 8.  He contends that the "vindictive investigation" being conducted is being done to make the defendants appear to be "tough on drugs," while "discounting the innocence of some" and overlooking the investigators' responsibility to seek the truth, do their due diligence, and respect his constitutional right to be free of cruel and unusual punishment. Id. at 9. He asserts that no other inmate in his position has been released from the SHU unless they incriminate themselves by pleading guilty, whether they are innocent or not. Id.  He contends that the incident "report conjured by SIS Agents Aldridge and Van Devender . . . is limited to . . . lies and inconsistencies . . . [and alleges] that the Plaintiff told his brother to call [] [a] redacted phone number in the report, and that . . . number . . .belongs to a woman who was later caught with drugs

in the visiting room. . . the redacted phone number does not belong to the lady caught with the drugs in the visiting room, and if . . . [the agents]would've run the phone number through their system (Trulincs Phone System) they would've realized that the particular phone number belonged to a woman in Ohio – no relation to . . . the drug running visitor of Mr. Masias." ECF No. 25-1 at 1. Moreover, he contends that another "glaring inconsistency" in the report is "the false and incorrect interpretation of the Swahili language, which the Plaintiff was purported to be speaking on his lone phone call." Id. He contends that if anyone had taken the time to translate the conversation, they would have "instantly realized" that the conversation had nothing to do with drugs. Id. Plaintiff insists that he had no involvement in the incident that triggered the investigation, an April 6, 2019 visit by a woman who brought drugs into the prison. Id. at 4. Attached to his Amended Complaint is what appears to be an excerpt from an incident report, which states in pertinent part

> On April 04, 2019, at 11:27 pm, inmate Quadiri Ayodele . . . placed a telephone call to [REDACTED] and tells a male individual that he needed him to call a female before Saturday or Sunday and gave him the telephone number [REDACTED]. This telephone number is a call-forwarding number for Joanna Masias, who is the visitor for inmate Francisco Masias. Inmate Ayodele is attempting to use the Swahili language, but is not affluent [sic] enough to prevent breaks in communication in which he uses English. At the beginning of the call he is heard saying "visit" and "balloons" then switches back to Swahili. At 2:40 into the call, he begins detailing the size of the balloons by stating, "about the size of a fireball or Jolly Rancher." After two more minutes of Swahili[,] inmate Ayodele switches back to English and, at 4:20, says "double the balloons."

ECF No. 25-2 at 8. Plaintiff contends that because he is innocent and there is no evidence to support the investigation and no federal charges have been brought in all this time, he is entitled to be released back to the general population. ECF No. 25 at 7 - 9.

An analysis of the Winter factors reveals that Plaintiff's motion for preliminary injunction fails, because he has not made a clear showing that he is likely to succeed on the merits of his

complaint. First, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right to challenge where they are placed within the BOP. Moody v. Daggert, 429 U.S. 78, 87 n.9 (1976). Second, while Plaintiff's allegations regarding denial of his constitutional rights may be sufficient to survive summary dismissal, the Defendants have yet to file their response, and therefore, the record presently before the undersigned is insufficient to demonstrate whether the Plaintiff was justifiably suspected of involvement in the alleged drug smuggling scheme.

Therefore, based upon the record currently before the court, the Plaintiff has not clearly shown that he is likely to succeed on the merits of his claims. Because the Plaintiff has not made the necessary showing as to the first factor, it is not necessary to even reach the other factors. See Dewhurst, 649 Fed 3rd at 293 (if a party cannot establish one of these factors, the court cannot grant a preliminary injunction to the movant).

### III. Recommendation

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [ECF No. 24] be **DENIED**.

The Plaintiff is notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Objections

shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket and to any counsel of record via electronic means.

DATED: March 9, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE